IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOEL MUIR,** *Plaintiff,* | : <br> : <br> : |
| v. | : CIVIL NO. 20-4459 <br> : |
| **JOHN E. WETZEL, et al.,** *Defendants.* | : <br> : |

### MEMORANDUM

**Scott, J.**                                                                                                                **March 21, 2024**

*Pro se* Plaintiff Joel Muir brings this 42 U.S.C. § 1983 action contending that Defendants John E. Wetzel, former Secretary of the Pennsylvania Department of Corrections, and seven correctional officers at SCI-Phoenix—the prison where Plaintiff is incarcerated—violated his First Amendment rights. Presently before the Court is Defendants' Motion for Summary Judgment (ECF No. 34), which has been fully briefed. For the reasons set forth below, Defendants' Motion will be granted. An appropriate Order will follow.

### I.    BACKGROUND & PROCEDURAL HISTORY

Plaintiff, an inmate in SCI-Phoenix, filed this action on September 10, 2020. ECF No. 1. His initial Complaint was dismissed in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). ECF No. 11. On December 15, 2020, Plaintiff filed an Amended Complaint (ECF No. 14), which the Court again dismissed in part with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). ECF Nos. 16, 17. However, the Court allowed Plaintiff's § 1983 claim for violation of his First Amendment rights to proceed. ECF Nos. 16, 17. This claim alleges that from September 2018 to April 2019, Defendants were either directly involved in changes to DC-ADM 803, the legal mail policy, regarding copying legal mail, or directly involved in the actual copying of his legal mail. ECF No. 14 ¶¶ 14–34. Plaintiff states that during the time period, he was engaged

1

in an attorney-client relationship with Teri Himebaugh, Esq., in relation to *Muir v. Cynthia Link, et al.*, 16-cv-2256 (E.D. Pa.) and communicated with Attorney Himebaugh on more than eight occasions during that period. *Id.* ¶ 14; ECF No. 50 at 2.

Pursuant to the mail policy in place at that time, prison officials were to open and photocopy legal mail in the inmate's presence, provide a photocopy of legal mail to the inmate, log the privileged correspondence and obtain the inmate's signature on the log, and then place the original legal mail in a sealed envelope inside a lockbox, ultimately to be securely and confidentially destroyed. *Id.*; *see also Travillion v. Pennsylvania Dep't of Corr.*, No. 1:18-CV-02075, 2023 WL 6796538, at *2 (M.D. Pa. Oct. 13, 2023) (describing 2018 DC-ADM 803 mail policy); *Walker v. Little*, No. 20-CV-4460, 2022 WL 580641, at *3 (E.D. Pa. Feb. 24, 2022) (same). Plaintiff recognizes that the Department of Corrections ("DOC") is no longer copying legal mail, and he indicates that he is no longer seeking injunctive relief. ECF No. 34 at 4 ¶ 7; ECF No. 46 ¶ 7. His remaining potential damages include nominal damages, compensatory damages in excess of $75,000, punitive damages, and costs of litigation. ECF No. 34 at 4 ¶ 8; ECF No. 46 ¶ 8.

Defendants filed the present Motion for Summary Judgment on July 9, 2021. ECF No. 34. On October 12, 2021, Judge Robreno granted Defendants' Motion for Summary Judgment as unopposed. ECF No. 35. However, after an appeal, the case was remanded so that Plaintiff could be given the opportunity to respond to the Motion to Summary Judgment. ECF No. 40. Thereafter, Defendants were required to produce certain discovery materials requested by Plaintiff (ECF No. 44), and Plaintiff filed Oppositions in Response to Defendants' Motion. ECF Nos. 45, 46, 50.

On July 10, 2023, this case was reassigned from Judge Robreno to this jurist (ECF No. 51), and the next day, Defendants filed a Reply in Support of their Motion for Summary Judgment.

ECF No. 52. Following a telephone conference, the Court ordered additional discovery be produced to Plaintiff. ECF No. 58. Defendants certified compliance with this Order by letter on September 25, 2023 (ECF No. 59), and on October 26, 2023, Plaintiff submitted an update as to the discovery he had received. ECF No. 60. Thereafter, on November 21, 2023, the Court held a status conference wherein the parties indicated there was nothing to supplement prior to this Court ruling on Defendants' Motion for Summary Judgment. Accordingly, this matter is ripe for resolution.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 151 (3d Cir. 2017) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "'[O]nly evidence sufficient to convince a reasonable factfinder' merits consideration at this stage." *Fowler v. AT & T, Inc.*, 19 F.4th 292, 299 (3d Cir. 2021) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)).

Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

In considering the motion, we draw all reasonable inferences in the nonmovant's favor. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted). Credibility determinations, the drawing of legitimate inferences from facts and the weighing of evidence are matters left to the jury. *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

Defendants argue they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies and failed to establish that any attorney-client privilege was breached from September 2018 to April 2019. ECF No. 34 at 9. Additionally, Defendants argue that Plaintiff's request for compensatory damages should be dismissed because only nominal damages can be awarded for a First Amendment violation. *Id.* ECF No. 34 at 9. The Court will address Defendants' first two arguments below. The Court declines to address Defendants' final argument.

#### A. Exhaustion

Before turning to the merits of Plaintiff's claim, the Court must decide whether Plaintiff exhausted his administrative remedies in accordance with the mandate of the Prison Litigation Reform Act ("PLRA"). "To assert a claim for improper legal mail handling in violation of the First Amendment, an inmate first must clear the [PLRA's] proper exhaustion hurdle, which requires inmates to comply with prison regulations in exhausting all available remedies before bringing suit." *Diaz v. Palakovich*, 448 F. App'x 211, 215 (3d Cir. 2011) (citations omitted). An inmate's

failure to properly exhaust may be excused where administrative remedies are "unavailable." *Ross v. Blake*, 578 U.S. 632, 642 (2016). Remedies are unavailable (1) where the procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44 (internal citations omitted).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 923 (2007). A Pennsylvania inmate's administrative remedies include the inmate grievance system outlined in DC-ADM 804. *See Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004). DC-ADM 804 provides a "three-step process that an inmate must fully complete in order to properly exhaust his administrative remedies under the PLRA." *Jackson v. Carter*, 813 F. App'x 823, 829 (3d Cir. 2020). The three steps are: (1) initial review by the facility's grievance coordinator; (2) internal appeal to the Superintendent; and (3) final appeal provided by the Secretary's Office of Inmate Grievance Appeals ("SOIGA"). ECF No. 34 at 17 (citations omitted). To file an initial grievance, an inmate must "include a statement of the facts relevant to the claim." *Id.* (citation omitted). This statement "shall include the date, approximate time, and location of the event(s) that gave rise to the grievance" and "shall identify individuals directly involved in the event(s)." *Id.* (citations omitted).

Here, it is undisputed that Plaintiff filed a grievance on September 20, 2018, indicating that his legal mail was being copied, compromising his right to confidentiality, and that he pursued the

grievance to final review. *See* ECF No. 34, Ex. D at 2. His initial grievance also indicates that he "spoke to CJ Thomas + Smith and Lt. Morgan" before submitting the grievance. *Id.* Defendants argue that this grievance does not follow the procedures required by the Department for proper exhaustion because (1) it fails to name Defendants Wetzel, Hall, Freeman, Foreman, James, or Knox; (2) it does not identify how any of the Defendants are involved in the constitutional violations; and (3) it was filed on September 20, 2018, so any occurrence of the copying of legal mail after that date would not have been properly grieved.

As to Plaintiff's failure to name all Defendants in his initial grievance, the Court does not find at this time that Plaintiff procedurally defaulted his claims under the PLRA by omitting certain Defendants names because there is a factual dispute as to whether these Defendants were omitted. In the Declaration of Keri Moore, a Grievance Officer within the SOIGA, Ms. Moore states that Exhibit D to Defendants' Motion for Summary Judgment is a true and correct copy of the documentation for Plaintiff's grievance which was appealed to Final Review, and the Grievance "names only Defendants Thomas and Smith, and does so in a general fashion that does not connect them to any of the underlying events alleged." ECF No. 34, Ex. E. As Ms. Moore represents, Exhibit D does in fact only name Defendants Thomas and Smith. *See* ECF No. 34, Ex. D. Additionally, Plaintiff stated in his deposition that he only named Defendants Thomas and Smith, along with Lieutenant Morgan, in his initial grievance. *See* ECF No. 34, Ex. A, Tr. 46:10–24.

However, Plaintiff asserts in his Response to Defendants' Motion that page two of his grievance was omitted wherein he names all of the Defendants in this matter, and attaches said missing page to his filing. ECF No. 45 at 7–8; ECF No. 46, Ex. A. at 23. Unfortunately, Defendants do not directly respond to Plaintiff's assertion that page two was missing from his grievance documentation. Thus, the Court is presented with a factual dispute, and although permitted, the

Court declines, at this juncture, to resolve this factual dispute regarding whether Plaintiff named the Defendants in his grievance. *See Small v. Camden Cnty.,* 728 F.3d 265, 270–71 (3d Cir. 2013) (holding "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury"); *Paladino v. Newsome,* 885 F.3d 203, 205 (3d Cir. 2018) (holding that while "judges may resolve factual disputes relevant to the exhaustion issue . . . some type of notice and an opportunity to respond are needed before a district court elects to decide factual disputes regarding exhaustion.").

Moreover, "contrary to Defendants' assertion, neither the DOC's grievance policy nor the PLRA requires a prisoner-plaintiff to name all of his perspective civil defendants in his prison administrative remedy," and "[t]he United States Court of Appeals for the Third Circuit has repeatedly held that '[t]he primary purpose of a grievance is to alert prison officials to the problem, not to provide personal notice to a particular official that he might be sued.'" *Scullen v. Mahally,* No. 3:16-CV-0965, 2018 WL 1335195, at *4 (M.D. Pa. Mar. 15, 2018) (citations omitted). Under Third Circuit precedent, if the identities of the Defendants were "'facts relevant to the claim' then it was mandatory for [Plaintiff] to name them in his grievance; if they were 'persons who may have information' or with whom [Plaintiff] made 'attempts to resolve the matter informally' then [Plaintiff] was required to identify them if practicable; and if they did not fall into any of these categories then [Plaintiff] was not required to identify them at all." *Robinson v. Johnson,* 343 F. App'x 778, 781 (3d Cir. 2009) (citation omitted).

Here, Plaintiff's grievance specifically alerted prison officials to the alleged problem thus satisfying the primary purpose of a grievance. As identified in his grievance, he complains of the mail policy in place at that time and outlines the steps mail room and security staff were required to take during the applicable period. *See Diaz,* 448 F. App'x at 216–17 (concluding that district

court erred in determining that the inmate's failure to name individual defendants in his grievances amounted to a procedural default under the PLRA because the prison excused the deficiency in acknowledging receipt of the grievance and acknowledging in its response that the mailroom staff was within the compass of the grievance). Given that there is a factual dispute as to whether Plaintiff specifically named all the Defendants, the Court declines to find at this time that Plaintiff did not properly exhaust.[1]

### B. Legal Mail Claim

"[S]tate prisoners, by virtue of their incarceration, do not forfeit their First Amendment right to use of the mails." *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006) (internal quotation marks and citation omitted) (holding "explicit policy of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech"). This is particularly true "with respect to privileged 'legal mail' exchanged with counsel." *Nifas v. Belles*, No. 1:19-CV-0538, 2020 WL 6799915, at *3 (M.D. Pa. Nov. 19, 2020) (citations omitted), *aff'd*, No. 20-3603, 2022 WL 336993 (3d Cir. Feb. 4, 2022) (citations omitted). "Prisoners' legal mail is accorded heightened protection because 'opening properly marked court mail . . . chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court.'" *Wilson v. Bergen Cnty. N.J. Sheriffs Off.*, No. 22-CV-5272, 2023 WL 3452671, at *8 (D.N.J. May 15, 2023) (citations omitted). "To state a First Amendment claim for interference with a prisoner's legal mail, a plaintiff must allege that the interference was done according to a 'pattern or practice.'" *Walker*, 2022 WL 580641, at *7

---

[1] Defendants also argue that because Plaintiff filed the grievance on September 20, 2018, any occurrence of copying legal mail after that date would not have been properly grieved and should be dismissed from the action. ECF No. 34 at 19. Given Plaintiff complained of the policy itself, incidents after September 20, 2018 until April 2019 (when the complained of mail policy was discontinued) are "fairly within the compass" of Plaintiff's grievance. *Spruill*, 372 F.3d at 234.

8

(citations omitted). "Isolated incidents of interference with legal mail are not actionable under the First Amendment absent evidence of an improper motive or evidence of injury." *Ali-X v. McKishen*, No. 12-cv-3147, 2019 WL 6724309, at *4 (D.N.J. Dec. 10, 2019) (citation omitted).

### 1. Attorney-Client Relationship

In moving for summary judgment on Plaintiff's claim, Defendants argue that Plaintiff's claim should be dismissed because Plaintiff failed to establish that any attorney-client privilege was breached from September 2018 to April 2019. Specifically, Defendants argue that Plaintiff has failed to support a claim that correspondence between Plaintiff and Attorney Himebaugh relating to the case *Muir v. Cynthia Link*, 16-cv-2256 (E.D. Pa.) during the relevant time period was protected by the attorney-client privilege because the attorney-client relationship terminated when Plaintiff began representing himself before the Third Circuit on April 20, 2018. *See* ECF No. 34 at 10–13.

The elements of attorney-client privilege are:

> (1) The asserted holder of the privilege is or sought to become a client.
> (2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.
> (3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.
> (4) The privilege has been claimed and is not waived by the client.

*Com. v. Mrozek*, 657 A.2d 997, 998 (Pa. Super 1995) (citation omitted). "[T]he attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011). "Notably, the attorney-client privilege does not

9

end when representation ceases." *CLL Acad., Inc. v. Acad. House Council*, 231 A.3d 884, 888 (Pa. 2020) (citation omitted).

Defendants argue that Plaintiff has failed to support a claim that correspondence between Plaintiff and Attorney Himebaugh were protected by the attorney-client privilege during the relevant period because their attorney-client relationship terminated when Plaintiff began representing himself before the Third Circuit on April 20, 2018. But as indicated above, the attorney-client privilege does not end when an attorney ceases to represent a client. *See Gillard*, 15 A.3d at 59. Therefore, even if Attorney Himebaugh was no longer representing Plaintiff as of April 20, 2018, the communications between them *could* still have been privileged. Therefore, the Court will not grant Defendants' Motion for Summary Judgment on this ground.

### 2. *Constitutional Violation*

Defendants also argue, however, that even if an attorney-client relationship may have continued to exist, Plaintiff has not alleged that his legal mail was actually read; rather, Plaintiff only alleges that Defendants copied the letters in front of him and could "skim" the letters and that by retaining the originals of his correspondence, Defendants violated the privilege. *See* ECF No. 34 at 12–13. The Court agrees with Defendants. Plaintiff has failed to come forward with any evidence that goes beyond the conclusory and unsupported allegations to lend support to his claim that Defendants engaged in a pattern or practice of actually reading his legal mail. *See Nifas*, 2020 WL 6799915, at *4 (granting summary judgment in case alleging that defendants engaged in a pattern or practice of actually reading plaintiff's legal mail where plaintiff relied solely on statements made in his verified complaint and the attached administrative grievance documents in which plaintiff alleged defendants kept original documents to read). Plaintiff bears the burden of proof at trial, and he has not presented any evidence that Defendants actually read his legal mail.

Plaintiff cannot rest on his mere allegations but rather must present actual evidence creating a genuine issue as to a material fact for trial. *See Celotex*, 447 U.S. at 322 (summary judgment must be granted "against any party 'who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial'"); *see also Anderson*, 447 U.S. at 248. Because Plaintiff has failed to present evidence creating a genuine issue of material fact for trial, Defendants' Motion for Summary Judgment must be granted.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 34) will be granted, and judgment will be entered in Defendants' favor and against Plaintiff. An appropriate Order will follow.

BY THE COURT:

_____
HON. KAI N. SCOTT
United States District Court Judge